UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED

01 JAN 12 PM 2:55

U.S. DISTRICT COURT
N.D. OF ALABAMA

SHARON MCCORD-FUSSELL,          )
                                )
        Plaintiff,              )
                                )
vs.                             )     Civil Action No. CV-00-S-1842-S
                                )
THE PERSONNEL BOARD OF          )
JEFFERSON COUNTY, ALABAMA and   )
BEN PAYTON, in his individual   )
capacity,                       )
                                )
        Defendants.             )

ENTERED

JAN 1 2 2001

## MEMORANDUM OPINION

Plaintiff Sharon McCord-Fussell alleges that she was subjected to unlawful sexual and racial discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*, and 42 U.S.C. § 1981. She contends that, while employed by the Personnel Board of Jefferson County, Alabama ("the Personnel Board"), her supervisor, Ben Payton, subjected her to a sexually hostile work environment, and treated her in a disparate manner due to her sex and her African-American heritage. Plaintiff's complaint also includes a claim for retaliation, alleging that she was suspended and ultimately terminated by defendant for complaining about the discriminatory environment in her workplace. Finally, plaintiff contends that Payton is liable on state law claims of assault and battery and false light invasion of privacy.



The action presently is before the court on a motion to dismiss (doc. no. 10) filed by the Personnel Board.  The Board argues that principles of res judicata and collateral estoppel preclude plaintiff from pursuing her federal claims.[1]

Matters outside the pleadings have been presented to, and considered by the court; accordingly, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties [have been] given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."  Rule 12(b), Fed. R. Civ. P.; *see also, e.g., Arnold v. United States Postal Service*, 649 F. Supp. 676, 678 (D. D.C. 1986).

### I. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides, in relevant part, that summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to

---

[1] Motion to dismiss (doc. no. 10), ¶ 5.

2

that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (emphasis supplied).

The party asking for summary judgment always bears the initial responsibility of informing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Id.* at 323, 106 S.Ct. at 2553; *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see also Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (*per curiam*) ("A moving party discharges its burden on a motion for summary judgment by 'showing' or 'pointing out' to the Court that there is an absence of evidence to support the non-moving party's case."). Rule 56 permits the moving party to discharge this burden with or without supporting affidavits. *See Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.

When the moving party has discharged its burden, the non-moving party cannot rest upon the pleadings; rather, Fed. R. Civ. P. 56(e) requires the party opposing summary judgment to go beyond the pleadings, and to demonstrate by affidavit or other appropriate means that there is a genuine issue of material fact for trial.[2] *See also Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553;

---

[2] Federal Rule of Civil Procedure 56(e) provides, in pertinent part, that:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere

3

*Jeffery*, 64 F.3d at 593-94.

The substantive law applicable to the case determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant and unnecessary will not be counted.").

"[T]he dispute about a material fact is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510; *see also Jeffery*, 64 F.3d at 594. Evidence that is merely colorable, *see Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988), conclusory, *see Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989),[3] conjectural, or "not significantly probative," *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511, will not create a "genuine" issue of material fact. Further, the nonmoving party must put

---

allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

[3] *See also* Broadway v. City of Montgomery, 530 F.2d 657, 660 (5th Cir. 1976) (holding that affidavit containing "nothing more than a recital of unsupported allegations, conclusory in nature," is not sufficient to avoid summary judgment) (*citing* Benton-Volvo-Metairie, Inc. v. Volvo Southwest, Inc., 479 F.2d 135 (5th Cir. 1973), and Bros, Inc. v. W.E. Grace Manufacturing Co., 261 F.2d 428 (5th Cir. 1958)).

4

forth more than a "mere 'scintilla'" of evidence; instead, "there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

In deciding whether the moving party has met its burden, the court may not weigh the evidence nor make credibility determinations; rather, "the evidence of the non-movant is to be believed." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (*en banc*) (quoting *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513). The court is obligated to draw all inferences from the evidence presented in the light most favorable to the nonmoving party and, also, to resolve all reasonable doubts in that party's favor. *See, e.g., Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993); *Four Parcels*, 941 F.2d at 1437; *Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Inferences in favor of the non-moving party are not unqualified, however. "Mere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment." *Resolution Trust Corporation v. Dunmar Corporation*, 43 F.3d 587, 592 (11th Cir. 1995) (citation omitted).

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the

court should not grant summary judgment.  *See Augusta Iron & Steel Works v. Employers Insurance of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988).  The bottom line is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52, 106 S.Ct. at 2512.

## II. SUMMARY OF FACTS

Plaintiff is a female American citizen of African ancestry. She was employed by the Personnel Board from 1989 until her termination in 1997.  The Personnel Board is responsible for the civil service systems of governmental entities within Jefferson County, and screens, tests, and certifies applicants for public employment.  The Board's Director is responsible for day-to-day activities and implements its policies.

The Board's functions are divided among five divisions. During the seven years preceding her termination, plaintiff was employed in the Classification Division, which ensures that employees are properly classified based upon their expected job duties and are compensated in accordance with those classifications.  Plaintiff's direct supervisor for most of the period relevant to this action was defendant Ben Payton.  (At some point that is not disclosed in the record presently before this court, Payton was promoted to Director of the Personnel Board.)

6

Plaintiff alleges that Payton began harassing her in 1989, by making sexually demeaning statements, and that he continued to do so throughout the remainder of her employment with the Board.[4] Plaintiff contends that Payton also referred to black employees (including plaintiff) as "nigger[s]," and dealt with plaintiff in a manner that was different from similarly situated white employees.[5]

After Payton became Director of the Personnel Board, he told a co-worker that he intended to "get[] rid" of plaintiff.[6] Plaintiff alleges that Payton encouraged co-workers to file grievances against her. She complained to members of the Personnel Board. Plaintiff asserts that Payton thereafter gave her a negative performance evaluation, increased his visits to her office, and demanded to be present during her meetings with staff.

The conflicts between Payton and plaintiff reached a climax

---

[4] Plaintiff alleges that these comments included statements such as the following: "[y]ou need to kiss me on the mouth every day because I take care of you"; and "[y]ou are an attractive woman, you dress well, but you do not know how to act; you can get anything you want but it is your attitude...." Complaint (doc. no. 1), ¶ 14. Plaintiff also alleges that Payton "continually harassed [me] by making sexually biased and derogatory statements in [my] presence, by treating [me] differently than similarly situated co-workers, and by attempting to constructively discharge [me] when [I] rebuffed his advances." *Id.*, ¶ 15.

[5] These actions included "refusing to allow [plaintiff] to attend Board meetings unless she was summoned, ... directly promoting employees rather than going through ... plaintiff's office, [and] by meeting with plaintiff's staff without her knowledge or presence." Complaint (doc. no. 1), ¶ 54. Further, plaintiff's complaints about the rude and threatening behavior of another co-workers went unheeded by Payton. Plaintiff also contends that Payton started "encouraging [plaintiff's co-workers] to file grievances against her, while at the same time discouraging them from filing grievances against similarly situated" white employees. *Id.*, ¶ 60.

[6] Complaint, ¶ 16.

7

during 1996. Payton suspended plaintiff, without pay, for a period of fourteen days on August 16, 1996.[7] The stated reason was that, on May 9, 1996, plaintiff had asked a person named Ken Davis to assist her in copying a disk received at a training workshop. In doing so, plaintiff allowed a non-Board employee unauthorized access to the Board's computer system, and loaded an "outside disk" that had not been checked and approved by the Network Administrator. The suspension notice explained that her conduct "risk[ed] the introduction of a computer virus into [the] network," and exhibited insensitivity to the "critical nature of computer security in this agency."[8]

Plaintiff appealed her suspension to the Personnel Board. On September 3, 1996 — following plaintiff's suspension, but prior to the Board's decision on her appeal — plaintiff also filed a charge of discrimination with the Equal Employment Opportunity Commission. She alleged discrimination based on her sex and retaliation for complaining about harassment in her workplace.[9]

The Personnel Board sustained Payton's suspension of plaintiff by a decision rendered on November 27, 1996.[10] The following week, plaintiff filed a civil action against Payton and the individual

---

[7] Plaintiff's evidentiary submission (doc. no. 14), Exhibit 2 (Notice of disciplinary action).

[8] Id. at 2.

[9] Id., Exhibit 6 (Charge of discrimination filed September 3, 1996).

[10] Id., Exhibit 1.

members of the Personnel Board in the Circuit Court of Jefferson County, Alabama.[11]  She alleged that defendants had unlawfully punished her for the exercise of protected speech,[12] that such conduct deprived her of "due process of law secured by the Constitution and laws of the State of Alabama," that such conduct was a breach of her employment contract, and that Payton had unlawfully interfered with her employment contract with the Board by "suspending her from her work on the basis of conduct that has not resulted in any punishment to other employees."[13]

While that action was pending in state court, plaintiff's employment was terminated by Payton during March of 1997, allegedly for violation of Personnel Board rules.[14]  Plaintiff contends that Payton's decision to terminate her was based upon "his evaluations

---

[11] *Id.*, Exhibit 7 (Complaint filed December 6, 1996).

[12] Plaintiff's complaint alleged that the she suffered harassment after she spoke confidentially to an individual, who was not an employee of the Personnel Board, about sexual harassment in her workplace.

[13] Plaintiff's evidentiary submission (doc. no. 14), Exhibit 7 (Complaint, filed December 6, 1996).

[14] Complaint (doc. no. 1), ¶ 30.  According to plaintiff's affidavit (doc. no. 13, ¶ 18), she was terminated for violating the following Board Rules:

| | |
|---|---|
| 6.2(c) | Conduct unbecoming an employee in the public service; |
| 6.2(h) | Incompetency or inefficiency; |
| 6.2(i) | Insubordination; |
| 6.2(k) | Neglect of Duty; |
| 6.2(m) | Violation of any lawful or reasonable regulation or order made and given by a superior officer; |
| 6.2(n) | Willful violation of any of the provisions of the Civil Service Law or of the Board's Rules; and |
| 6.2(p) | For any other reason deemed to be in the best interest of the public service and not inconsistent with the rules and regulations arising therein. |

of [her] work ... as well as alleged grievances and or complaints he solicited [from other employees]."[15]

Plaintiff chose not to appeal her termination to the Personnel Board, because "[she] felt that any appeal would have been to my accuser (the Board and its Director) who was also serving as the 'jury' for the bogus claims which had been brought against me."[16]

Plaintiff did, however, amend her original EEOC charge to encompass the circumstances surrounding the termination of her employment.  In her amended charge, dated March 13, 1997, plaintiff alleged that she was "discharged because of [her] sex, ... because of [her] prior complaints of discrimination against the executive director, and in retaliation for filing a charge with the EEOC...."[17]

Plaintiff also "chose to move forward with the [state] lawsuit [she] had previously filed over [her] suspension, [by] amending it to address the events surrounding [her] termination."[18]  Her amended complaint, dated May 21, 1997, again alleged that Payton had

---

[15] Affidavit of plaintiff (doc. no. 13), ¶ 19.  Following her termination, plaintiff applied for unemployment benefits from the Alabama Department of Industrial Relations.   At a hearing on April 23, 1997, an appeals referee determined that plaintiff had not engaged in "misconduct" which would render her ineligible for unemployment compensation.  The Board appealed this decision first to the Department's Board of Appeals, then to the Circuit Court of Jefferson County, Alabama.   Both appeals were decided in favor of plaintiff.   See Plaintiff's evidentiary submission (doc. no. 14), Exhibits 12-13.

[16] Affidavit of plaintiff (doc. no. 13), ¶ 24.

[17] Plaintiff's evidentiary submission (doc. no. 14), Exhibit 9 (Charge of discrimination dated March 13, 1997).

[18] Affidavit of plaintiff (doc. no. 13), ¶ 34 (emphasis supplied).

10

interfered with her employment contract, and that defendants had punished and retaliated against her for engaging in protected speech, resulting in her termination.[19]  The amended complaint also alleged that plaintiff was held to "higher standards than other employees" in violation of the equal protection clause of the state and federal constitutions and 42 U.S.C. § 1983.[20]

Plaintiff's state action was dismissed without prejudice on August 4, 1997, apparently due to her failure to properly exhaust administrative remedies prior to instituting suit — at least that is the inference drawn by this court from the following language in the state circuit judge's order of dismissal:  "[p]laintiff's remedy lies in ... a hearing before a panel of three Circuit Judges.  However, plaintiff has declined this proscribed [sic]

---

[19] The amended complaint states that:

> [w]hen the plaintiff spoke in February 1996 about perceived sexual harassment by defendant Payton to someone, who was not an employee of the Jefferson County Personnel Board, but did not in any way charge defendant Payton administratively or judicially with sexual harassment, defendant Payton began a campaign against the plaintiff creating an extremely hostile work environment for her, soliciting adverse information about the plaintiff from employees and others and encouraging other employees to file administrative charges against the plaintiff and by filing administrative charges himself thereby ultimately causing her dismissal as an employee.

Plaintiff's evidentiary submission (doc. no. 14), Exhibit 8 (amended complaint), ¶ 9.

[20] Id., ¶ 10.  Plaintiff argues that at the time the amended complaint was filed, she "could not raise claims for violations of Civil Rights under Title VII because she had not yet received her right to sue letter from the EEOC." plaintiff's memorandum in response to defendant's motion for summary judgment (doc. no. 20), at 6.

method of redress."[21]

Plaintiff appealed the dismissal of her action to the Alabama Supreme Court, which affirmed without opinion. *Fussell v. Payton*, 741 So. 2d 1128 (Ala. 1998).[22]

Following an investigation, the EEOC issued a decision on September 30, 1999, stating that "it is reasonable to believe that the [plaintiff] was discriminated against [on the basis of her sex] and on the additional basis of her race."[23]  The Commission invited the Personnel Board to participate in conciliation efforts.  The invitation was refused.  The EEOC issued notice of plaintiff's right to sue on April 5, 2000.[24]  This action followed.

### III. DISCUSSION

**A.   Preclusive Effect of State Court Proceedings**

The Personnel Board argues in its motion to dismiss that:

> The State Circuit Court dismissed plaintiff's appeal and the Supreme Court of the Alabama affirmed....
>
> The outcome of the State court case has a preclusive effect on this proceeding.  The Plaintiff's complaint is due to be dismissed because all of her claims are barred by the doctrines of res judicata ..., collateral estoppel ..., direct estoppel ..., and by a former dispositive adjudication. [[25]]

---

[21] Plaintiff's evidentiary submission (doc. no. 14), Exhibit 15 (Order).

[22] Motion to dismiss (doc. no. 10), Exhibit 5.

[23] Plaintiff's evidentiary submission (doc. no. 14), Exhibit 16 (EEOC determination).

[24] *Id.*, Exhibit 17 (Notice of right to sue).

[25] Motion to dismiss (doc. no. 10), ¶¶ 4-5.

When determining the preclusive effect of the state court's dismissal of plaintiff's action, this court is obliged to adhere to the full faith and credit provisions found in 28 U.S.C. § 1738,[26] which "requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgements were entered." *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 466, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262 (1982). Stated differently, federal courts are to apply principles of state law when determining the preclusive effects of state-court judgments. "It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984).

Res judicata — also called claim preclusion — is a legal principle providing that a final judgment rendered on the merits precludes the parties to the action, or those in privity with them, from relitigating all claims that were (or could have been)

---

[26] Section 1738 provides in pertinent part:

> The records and judicial proceedings of any court of any such State ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

litigated in the prior action.  *See Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981).

The concept of collateral estoppel — or issue preclusion — provides that, once a court has decided an issue necessary to its judgment, that judgment precludes relitigation of the same issue in a different action between the same parties.  *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5, 99 S.Ct. 645, 649 n.5, 58 L.Ed.2d 103 (1981).

The Supreme Court of Alabama differentiated the elements and functions of res judicata and collateral estoppel in *Smith v. Union Bank & Trust Co.*, 653 So. 2d 933 (Ala. 1995), stating:

> For the doctrine of res judicata, or claim preclusion, to apply, the following elements are required:  (1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with the same parties, and (4) with the same subject matter presented in both actions.  ...  "Where these elements are present, the former suit bars any later suit <u>on the same cause of action, including issues [*i.e.,* claims] that were or could have been litigated in the prior case</u>."  *Lott v. Toomey*, 477 So. 2d 316, 319 (Ala. 1985).
>
> By way of showing the slight contrast, we note that our cases applying the doctrine of collateral estoppel, or issue preclusion, have required the following elements:  (1) that an issue in a prior action was identical to the issue litigated in the present action; (2) that the issue was actually litigated in the prior action; (3) that resolution of the issue was necessary to the prior judgment; and (4) that the same parties are involved in the two actions.  ...  "Where these elements are present, the parties are barred from relitigating

14

> issues actually litigated in a prior suit." *Lott*, 477
> So. 2d at 319.

*Smith*, 653 So. 2d at 934 (emphasis supplied) (some citations omitted).

An exhaustive, point-by-point application of the facts of the instant case to every element described above is not necessary. Instead, one fact is determinative: plaintiff's state court action was dismissed <u>without prejudice</u>. In pertinent part, the state court judge wrote:

> Probably every appeal to the Personnel Board inherently contains allegations of "unequal treatment under the law." Further, "denial of the right to free speech" appears from both Complaints to arise from job related oral conduct of the Plaintiff which the Personnel Board apparently found to be violative of job duties and description.
>
> Plaintiff's remedy lies in the previously described avenue of appeal, a hearing before a panel of three Circuit Judges. However, plaintiff has declined this proscribed [sic] method of redress.
>
> Wherefore, the defendant's motion to dismiss is Granted.   <u>This is a dismissal without prejudice.</u>[27] Costs taxed to plaintiff.[28]

"If an action is dismissed 'without prejudice,' there is no

---

[27] Rule 41(b) of the Alabama Rules of Civil Procedure governs the effect of involuntary dismissals and provides in pertinent part that:

> <u>Unless the court in its order otherwise specifies</u>, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits. [Emphasis supplied].

[28] Plaintiff's evidentiary submission (doc. no. 14), Exhibit 15 (Order) (emphasis added).

adjudication on the merits of the case; the judgment does not bar another lawsuit on the same cause of action unless the words [of the court's order] are qualified as to certain claims." *Smith*, 653 So. 2d at 935; *see also Blue Creek Industries, Inc. v. Alcon Construction, Inc.*, 631 F.2d 75, 78 n.5 (5th Cir. 1980) (under Alabama law, a dismissal without prejudice is not an adjudication on the merits).[29]

> The words "without prejudice" in their general adaption, when used in a decree, mean that there is no decision of the controversy on its merits, and leaves the whole subject in litigation as much open to another suit as if no suit had ever been brought. ... When the words "without prejudice" appear in an order or decree, it shows that the judicial act done is not intended to be res judicata of the merits of the controversy.

*Parker v. Rucker*, 289 Ala. 496, 503, 268 So. 2d 773, 780 (1972) (opinion on rehearing) (internal citations omitted).

The state court's order dismissing plaintiff's complaint, therefore, cannot be given res judicata effect. *Smith*, 653 So. 2d at 935.

Moreover, when an action is dismissed without prejudice, there is "no 'actual litigation' for the purposes of collateral estoppel." *Id.*

It accordingly follows that the Personnel Board's arguments are devoid of merit.

---

[29] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981)(*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

**B.    Preclusive Effects of an Unreviewed Agency Decision**

The Board nevertheless contends that, even if the dismissal of plaintiff's state court action is not given preclusive effect, the "unreviewed ... administrative decision[]" of the Personnel Board should be,[30] because:

> The Hearing officer heard testimony and reviewed evidence concerning all of the facts which led to [plaintiff's] suspension and eventual termination.  The Hearing Officer's recommendation to the Personnel Board resolved the facts involved in the termination and made a determination as to whether the suspension was warranted by the evidence presented at the hearing. ...
>
> . . .
>
> Moreover, [plaintiff] should be barred from litigating any issues pertaining to the Personnel Board's decision that her suspension and eventual termination was warranted by the evidence presented at the hearing.[31]

While "Title 28 U.S.C. § 1738 governs the preclusive effect to be given the judgments and records of state courts, [it] is not applicable to ... [judicially] unreviewed state administrative" findings.  *University of Tennessee v. Elliott*, 478 U.S. 788, 794, 106 S.Ct. 3220, 3224, 92 L.Ed.2d 635 (1986); *see also Gjellum v. City of Birmingham*, 829 F.2d 1056, 1061 (11th Cir. 1987) ("The full faith and credit statute, 28 U.S.C. § 1738, applies only to the judgments and records of state courts and not to decisions of state administrative agencies.").

---

[30] Defendant's brief in support of the motion for summary judgment (doc. no. 18), at 9.

[31] *Id.* at 11-12.

Even so, there are occasions when administrative findings and decisions will have a preclusive effect on subsequent proceedings. For example, the Supreme Court has found "that Congress, [when] enacting the Reconstruction civil rights statutes [*e.g.*, 42 U.S.C. §§ 1981, 1983, and 1985], did not intend to create an exception to the general rules of preclusion." *Elliott*, 478 U.S. at 796-797, 106 S.Ct. at 3225. With respect to claims brought under those statutes, the Court has concluded:

> [W]e hold that when a state agency "acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate," ... federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts.

*Id.* at 799, 106 S.Ct. at 3226 (quoting *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966)) (footnote omitted). In the same opinion, however, the Court also held that decisions of a state administrative agency that have not been judicially reviewed do <u>not have preclusive effect on an employee's Title VII discrimination claims</u>. *Elliott*, 478 U.S. at 796, 106 S.Ct. at 3225 ("[W]e conclude that ... Congress did not intend [for judicially] unreviewed state administrative proceedings to have preclusive effect on Title VII claims."); *see also Astoria Federal Savings and Loan Association v. Solimino*, 501 U.S. 104, 110, 111 S.Ct 2166,

2171, 115 L.Ed.2d 96 (1991) (judicially unreviewed state administrative findings do <u>not</u> have preclusive effect on a plaintiff's <u>ADEA claim</u>); *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 470 n.7, 102 S.Ct. 1883, 1891 n.7, 72 L.Ed.2d 262 (1982) (holding that it was "clear that <u>unreviewed</u> administrative determinations by state agencies ... should <u>not</u> preclude ... review [in federal court] <u>even if such a decision were to be afforded preclusive effect in a State's own courts</u>") (emphasis supplied); *Delgado v. Lockheed-Georgia Co.*, 815 F.2d 641, 647 (11th Cir. 1987) (denying preclusive effect to decisions by a state administrative agency that had not been judicially reviewed in state court in plaintiffs' ADEA action).

The *Elliott* Court cited two primary reasons for different treatment of Title VII claims.  First, "[u]nder 42 U.S.C. § 2000e-5(b), the Equal Employment Opportunity Commission (EEOC), in investigating discrimination charges, must give 'substantial weight to the final findings and orders made by State and local authorities in proceedings commenced under State or local [employment discrimination] law.'"  *Elliott*, 478 U.S. at 795, 106 S.Ct. at 3224.[32]  The Court explained that "it would make little

---

[32] 42 U.S.C. § 2000e-5(b) provides:

   Whenever a charge is filed by or on behalf of a person claiming to be aggrieved, or by a member of the Commission, alleging that an employer ... has engaged in an unlawful employment practice, the Commission shall serve a notice of charge ... on such employer

sense for Congress to write such a provision if state agency
findings were entitled to preclusive effect in Title VII actions in
federal court." *Id.* Second, the Court found that the legislative
history of Title VII confirmed the conclusion that Congress
intended that individuals be provided a "trial de novo on Title VII
claim[s]." *Id.*

Based on *Elliot*, plaintiff's Title VII claims — Counts I
(disparate treatment based on sex), II (sexually hostile work
environment), and IV (retaliation) of her complaint — are not
precluded by the judicially unreviewed administrative decisions of
the Personnel Board.   The status of Count III of plaintiff's
complaint is not as clear.   It specifically alleges <u>race</u>
discrimination in violation of Title VII.[33]   The first paragraph of
plaintiff's complaint, however, states that it is brought for

---

... within ten days, and shall make an investigation thereof. ...
If the Commission determines after such investigation that there is
not reasonable cause to believe that the charge is true, it shall
dismiss the charge and promptly notify the person claiming to be
aggrieved and the respondent of its action.  In determining whether
reasonable cause exists, the Commission shall accord substantial
weight to final findings and orders made by State or local
authorities in proceedings commenced under State or local law
pursuant to the requirements of subsections (c) and (d) of this
section. If the Commission determines after such investigation that
there is reasonable cause to believe that the charge is true, the
Commission shall endeavor to eliminate any such alleged unlawful
employment practice by informal methods of conference, conciliation,
and persuasion. ...  The Commission shall make its determination on
reasonable cause as promptly as possible and, so far as practicable,
not later than one hundred and twenty days from the filing of the
charge or, where applicable under subsection (c) or (d) of this
section, from the date upon which the Commission is authorized to
take action with respect to the charge.

[33] Complaint (doc. no. 1), ¶ 72.

"violation of Title VII ... and violations of 42 U.S.C. § 1981."[34] Nevertheless, the fact that plaintiff may be pursuing redress for racial discrimination under two bodies of statutory law, Title VII and 42 U.S.C. § 1981, does not change the fact that her Title VII race discrimination claim is not precluded.   The plaintiff in *Elliot* also alleged violations of both Title VII and the Reconstruction-era civil rights statutes.   Justice Stevens stated that, in such situations:

> Preclusion of claims brought under the post-Civil War Acts does not advance the objectives typically associated with finality or federalism.   In the employment setting which concerns us here, precluding civil rights claims based on the Reconstruction-era statutes fails to conserve the resources of either the litigants or the courts, <u>because the complainant's companion Title VII claim will still go to federal court under today's decision</u>.

*Elliot*, 478 U.S. at 800, 106 S.Ct. at 3227 (Stevens, Brennan, Blackmun, JJ., concurring in part and dissenting in part) (emphasis added).   Therefore, Counts I through IV of plaintiff's complaint are not barred.

Finally, with respect to Counts V and VI, the remaining claims which are asserted only against defendant Payton, it is important to note that the *Elliott* court limited its holding to state agency <u>factfinding</u>.   *Id.* at 799, 106 S.Ct. at 3226.   When Personnel Boards do not set forth any findings of fact on a subject, there is

---

[34] *Id.*, ¶ 1.

21

nothing to which a federal court may give preclusive effect. *K.W. Wallace v. City of Montgomery*, 956 F. Supp. 965, 973 (M.D. Ala. 1996). In the Board's "Opinion and Decision" sustaining the suspension of plaintiff, there is but one reference to any factfinding, and that is found in paragraph two, which states, "the causes of action stated in Notice to Employee dated August 18, 1996, are adopted by the Board as its findings herein."[35] The Notice to Employee issued to plaintiff on August 18, 1996, contains only the factual allegations surrounding plaintiff's actions in allowing a non-Board employee unauthorized access to the Board's computer system and her conduct in the subsequent investigation into the matter. These limited "findings" by the Board are in no way related to plaintiff's claims against Payton for assault and battery (Count V) and false light invasion of privacy (Count VI). Further, these issues were not properly before the Board and were not necessary for the Board to render its decision on plaintiff's suspension. As such, plaintiff's allegations against Payton are not precluded by the Board sustaining her 1996 suspension.

### III. CONCLUSION

Based on the foregoing, the court concludes that defendant's motion to dismiss plaintiff's claims based upon the preclusive effects of the state court's action or the unreviewed agency

---

[35] Plaintiff's evidentiary submission (doc. no. 14), Exhibit 1 (Opinion and decision of board sustaining plaintiff's suspension).

decisions of the Personnel Board, is due to be denied, and that none of the counts in plaintiff's complaint are precluded.   An appropriate order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this _12th_ day of January, 2001.

_____
United States District Court